**In re SEARCH WARRANT FOR SECOND FLOOR BEDROOM.**

**No. 80–0018M–01.**

United States District Court,
D. Rhode Island.

May 9, 1980.

Knight Edwards, Providence, R. I., for Providence Journal Co.

James E. O'Neil, Asst. U. S. Atty., Providence, R. I., for U. S. Government.

## OPINION AND ORDER

PETTINE, Chief Judge.

On April 3, 1980, the government applied for a search warrant to seize certain carpeting from the home of Edward P. Manning, the Speaker of the State House of Representatives. The application was supported by the affidavit of W. Dennis Aiken, a special agent with the Federal Bureau of Investigation. A federal magistrate issued the search warrant, which was returned on April 7. Also on April 7, the United States Attorney moved to seal and impound Aiken's affidavit, claiming that its disclosure would frustrate an on-going grand jury investigation. At an *ex parte* hearing the magistrate granted the motion to seal. The Providence Journal Company (the Journal) has moved to unseal the affidavit, and its motion is now before the Court. For the reasons explained below, the Journal's motion to unseal is granted.

The fundamental legal issue presented is the applicability of two rules of criminal procedure, Fed.R.Crim.Pro. 6(e) and 41(g), and the potential conflict between them.[1] Rule 41(g) provides that all of the papers concerning the search warrant shall be filed with the clerk:

(g) Return of Papers to Clerk. The federal magistrate before whom the warrant is returned shall attach to the warrant a copy of the return, inventory and all other papers in connection therewith and shall file them with the clerk of the district court for the district in which the property was seized.

Although Rule 41(g) does not specifically refer to affidavits, the requirement that "all other papers in connection therewith" shall be filed would seem to encompass affi-

---

1. A preliminary question, which neither party has raised, is whether the Journal has standing to challenge the magistrate's order. To be entitled to sue, the Journal must show that it has suffered injury in fact and that it is a member of the class which Rule 41(g) was designed to benefit. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *In re Swearingen Aviation Corp.*, 605 F.2d 125 (4th Cir. 1979) (per curiam). The Journal has shown injury, since it wishes to inspect, and possibly to publish, the contents of the affidavit, and it is now unable to do so. A more difficult question is who the intended beneficiaries of Rule 41(g) are, a point on which the Advisory Committee Notes are silent. Obviously, the person subjected to the search is a prime beneficiary of the rule; the rule makes it possible for him to challenge the validity of the search warrant. The search victim need not be the only beneficiary, however. Since important policies are served by public disclosure of court records, see text at p. 209, there is every reason to suppose that the Rule was adopted to benefit the public as well. Thus the Journal, which seeks to publicize the contents of the affidavit, can be considered an intended beneficiary of the Rule. Accordingly, the Journal has standing to pursue this motion.

Furthermore, although the Court finds it unnecessary to reach the constitutional issue raised by the Journal, the newspaper obviously has standing to assert a violation of its first amendment rights.

davits. *See In re Sealed Affidavit(s) To Search Warrants Executed on February 14, 1979*, Misc. Civ. 722 (D.Nev. Oct. 3, 1979), slip op. at 3–4. Indeed, in the usual case, it is important that the affidavit be available to a defendant who wishes to challenge the validity of a search warrant in a pretrial motion to suppress. Those few courts that have considered motions to seal or unseal affidavits have assumed that sealing was an extraordinary action. *See In re Sealed Affidavit(s) to Search Warrants Executed on February 14, 1979 (United States v. Agosto)*, 600 F.2d 1256 (9th Cir. 1979) (per curiam); *In re Braughton*, 520 F.2d 765 (9th Cir. 1975). We do not understand the government to contest the filing requirement or the general principle that all papers filed with the clerk become public record available for inspection. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). Furthermore, the policy underlying public access to court records is an important one. As this Court has stated previously:

> This Court has the deepest conviction that a vigorous and free press, *acting on the basis of the maximum access to governmental information*, serves as a constant check on the excesses, mistakes and wrongdoing of all branches of government.

> *Providence Journal Company v. Federal Bureau of Investigation*, 460 F.Supp. 762, 777 (D.R.I.1978), *rev'd* 602 F.2d 1010 (1st Cir. 1979) (emphasis added).

*See Nixon v. Warner Communications, Inc., supra*, 435 U.S. at 597–99, 98 S.Ct. at 1311–12. *See also Cox Broadcasting Company v. Cohn*, 420 U.S. 469, 491–93, 95 S.Ct. 1029, 1044–45, 43 L.Ed.2d 328 (1975).

On the other hand, I think it is clear that the district court has the power to seal an affidavit in the proper circumstances. The only circuit court to consider the question has squarely held that the district courts have the inherent power to seal affidavits, "as an incident of their constitutional function, to control papers filed with the courts within certain constitutional and other limitations." *In re Sealed Affidavit(s) to Search Warrants*, 600 F.2d 1256, 1257 (9th Cir. 1979) (per curiam). *See Nixon v. Warner Communications, supra*, 435 U.S. at 595–99, 98 S.Ct. at 1310–12. The ninth circuit did not address the question of what standards should govern the decision to seal; on remand the district court concluded that sealing was a "discretionary matter." *In re Sealed Affidavit(s) to Search Warrants Executed on February 14, 1979*, Misc.Civ. 722 (D.Nev. Oct. 3, 1979), slip op. at 3.

Thus the question here is not so much whether the Court can seal the affidavit, but whether it should do so, or, indeed, must do so. The first inquiry is the applicability of Fed.R.Crim.Pro. 6(e), which prohibits disclosure of "matters occurring before the grand jury."[2] The govern-

2. (e) Recording and Disclosure of Proceedings.
 (1) Recording of Proceedings.—All proceedings, except when the grand jury is deliberating or voting, shall be recorded stenographically or by an electronic recording device. An unintentional failure of any recording to reproduce all or any portion of a proceeding shall not affect the validity of the prosecution. The recording or reporter's notes or any transcript prepared therefrom shall remain in the custody or control of the attorney for the government unless otherwise ordered by the court in a particular case.
 (2) General Rule of Secrecy.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.
 (3) Exceptions.
 (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—
 (i) an attorney for the government for use in the performance of such attorney's duty; and
 (ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the

ment's original motion to seal did not claim that the information in the affidavit stemmed from the grand jury investigation; its later memorandum in opposition to the Journal's motion to unseal stated that "certain facts recited in the Affidavit now under seal were derived from an ongoing Grand Jury Investigation." In order to ascertain exactly what the government's interests were, the Court called a conference. At that meeting, the United States Attorney refused to indicate whether the persons who supplied the information upon which Aiken based his affidavit (the "sources") had already testified before the grand jury at the time the affidavit was sworn, or, indeed, whether they had been called since, or would be called in the future.[3] Nor would he indicate how Aiken had come by the information in the affidavit. At no time did the United States Attorney indicate a willingness to answer these questions even outside the presence of opposing coun-

sel. If the government wishes to invoke the protections available to the grand jury, it must first show *how* this affidavit resulted from the grand jury proceedings. A general allegation, totally unsupported by any evidence or explanation is not enough, and this Court has no alternative but to assume that the persons mentioned in the affidavit had not yet testified before the grand jury at the time Aiken swore out the affidavit. Furthermore, this Court has been given no indication of whether the sources will *ever* be asked to testify before the grand jury. Although I am hesitant to assume that they will testify, this possibility would not alter the decision, and I will therefore allow for it in my analysis of the case.

 It seems clear that if the government sources have not yet testified, the affidavit will disclose only what occurred in interviews conducted by government

government in the performance of such attorney's duty to enforce federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

(ii) when permitted by a court at the request of the defendant, upon showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

3. *May 7, 1980 Conference*

1. Q (By: J. Pettine) Question Number 1 is: Is a Grand Jury investigation in progress relative to the matters that were contained in the search warrant?
A (By: U. S. Attorney, Paul Murray) Yes, it is, your Honor.
2. Q It's still in progress?
A Yes.
3. Q Is that it?
A Yes.
4. Q All right, Question Number 2: In this affidavit this Special Agent recited information which was allegedly given to him by another person or persons, and I will refer to him as "X". At the time this agent swore out the affidavit had X testified before the Grand Jury?
A I don't think I could answer that, your Honor.
5. Q All right. Don't misunderstand me, these are questions I have to know. Can you tell me whether or not X is going to testify before the Grand Jury?
A I can't answer that question either.
6. Q Can you tell me how the agent got the information concerning X, can you answer that one?
A No, I can not.
7. Q You can't answer that one, okay. Has the information contained in the affidavit been presented to the Grand Jury in any other form other than the testimony of X; do you think you can answer that or not?
A You mean presented to the Grand Jury in any other form?
8. Q Yes.
A I do not believe so.
9. Q You're not sure, you don't know— Okay, that's the whole reason for calling you here—

agents, not what occurred before the grand jury. Nevertheless, since the grand jury is investigating the subject with which the affidavits deal, and since these sources may testify before the grand jury, unsealing could have the practical effect of revealing significant information about the grand jury investigation. One court has broadly interpreted Rule 6(e), holding that "[t]he test, then, is whether the documents in question may tend to reveal what transpired before the grand jury." *United States v. Armco Steel Corp.,* 458 F.Supp. 784, 790 (W.D.Mo.1978). In that case the court refused to order the disclosure of government attorneys' memoranda summarizing their interviews with witnesses that were prepared prior to the grand jury proceedings. The seventh circuit has taken a different approach, distinguishing between information that is the fruit of the government's investigation and an inquiry undertaken on the grand jury's own initiative. *In re September 1971 Grand Jury (Mara v. United States),* 454 F.2d 580 (7th Cir. 1971), *rev'd on other grounds,* 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). In that case the court ordered that an affidavit requesting handwriting exemplars be revealed in open court where it contained information stemming only from the government's investigation. Aside from these cases, there appears to be scant precedent to guide my interpretation of Rule 6(e). After careful reflection, I decline to follow *Armco.* I would tend to agree that Rule 6(e) is not limited to grand jury transcripts, and could well protect a government attorney's notes prepared *after* the grand jury proceedings, *see U. S. Industries, Inc. v. United States District Court,* 345 F.2d 18 (9th Cir.), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965), but I do not think that the same reasons would apply to disclosure of material prepared *prior to* a grand jury proceeding.[4] The veil of secrecy covers the grand jury proceedings

themselves, not the subject matter of the investigation. Thus, someone who needs (and has a right to) documents that happen to be in the possession of the grand jury may have access to them, so long as his interest is in the contents of the documents themselves and is not an attempt to use the documents to determine what transpired in the grand jury room. *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52 (2d Cir. 1960) (Interstate Commerce Commission, which had statutory authority to inspect trucking company records, permitted to examine records that had been turned over to the grand jury because the "data [was] sought for its own sake—for its intrinsic value in furtherance of a lawful investigation—rather than to learn what took place before the grand jury . . . ."). Statements made outside of grand jury proceedings are, presumably, freely made and need not be given if a witness fears disclosure. In an investigatory interview a witness may have his attorney present if he wishes. Furthermore, reading Rule 6(e) to cover government investigation that may lead to a grand jury probe would raise a host of questions about the scope of such secrecy, questions which Rule 6(e) does not purport to answer. Accordingly, I hold that Rule 6(e) does not apply to statements made before grand jury testimony is given.

This reading of Rule 6(e) does not end the inquiry, however. The policy behind grand jury secrecy is an important one and may not be limited to the provisions of Rule 6(e). Indeed, some courts have considered Rule 6(e) as an enumeration of the *exceptions* to the general rule of secrecy, rather than a comprehensive delineation of all material that is to be protected by the general policy of grand jury secrecy. *See In re Disclosure of Testimony Before the Grand Jury (Appeal of Troia),* 580 F.2d 281, 285 (8th Cir. 1978); *In re Biaggi,* 478 F.2d 489, 491–92 (2d Cir. 1973). The Supreme Court has protected the "long-established policy that

---

4. It should be noted that material prepared prior to grand jury proceedings would usually be protected by the work product doctrine. The *Armco* case presented an atypical situation in which litigants in a civil trial were fighting over government memoranda prepared in conjunction with an earlier criminal case. The government did not oppose disclosure. *See Armco* at 785–86.

maintains the secrecy of the grand jury proceedings in federal courts." *United States v. Procter & Gamble Company*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). *See In re Grand Jury Proceedings (United States v. Northside Realty Associates, Inc.)*, 613 F.2d 501 (5th Cir. 1980).

 I must consider, therefore, whether the disclosure of this non-grand jury material would so jeopardize the grand jury investigation that it should be sealed. *See In re Sealed Affidavit(s) to Search Warrants Executed on February 14, 1979*, Misc. Civ. 722 (D.Nev. Oct. 3, 1979) (used balancing test to determine whether search warrant affidavit sworn during federal investigation should be sealed). The government's only argument of grand jury harm is that "[i]t is possible that if the affidavit becomes public record, future Grand Jury witnesses will be in a position to tailor their testimony once having had an opportunity to review that Affidavit which provides extensive background and facts relative to the ongoing Grand Jury Investigation and thereby frustrate and obstruct that Investigation." Government's Motion to Seal and Impound, p. 1. The government has not offered to show any specific reasons for fearing such tailored testimony in this case, nor does the Court's perusal of the affidavit reveal any. Furthermore, this Court's preliminary statement in this matter, issued April 8, 1980, indicated that a decision would not be reached for two to four weeks, which gave the government ample opportunity to call any witnesses who might be particularly likely to alter their testimony. The government's fears here are purely speculative. To allow it to prevail upon such a weak showing of injury would reduce this Court to a mere rubber stamp for the government. It would be an abdication of judicial responsibility to order sealing whenever the government makes unsupported claims of harm. As the seventh circuit has said, "By now it should be apparent that 'grand jury secrecy' is no magical incantation making everything connected with the grand jury's investigation somehow untouchable." *In re September 1971 Grand Jury (Mara), supra*, at 583. While grand jury secrecy can un-

questionably serve important ends, the grand jury's power can also be abused. It is important, therefore, that the government demonstrate a real possibility of harm before the Court takes the unusual step of sealing a search warrant affidavit not based directly on grand jury testimony. The mere possibility of harm alleged is not sufficient to outweigh the established policy embodied in Rule 41(g).

Accordingly, the Providence Journal Company's motion to unseal the affidavit is granted. To preserve the status quo and to prevent irreparable harm to the government, the order will be stayed pending appeal. *See Providence Journal Company v. Federal Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979).