In re Application of KANSAS CITY STAR COMPANY.

In re Application of ABC, INC.

In re Application of CBS, INC.

UNITED STATES of America, Plaintiff,

v.

Nicholas CIVELLA, Peter Tamburello and John Tortora, Defendants.

No. 80–00023–CR–W–5.

United States District Court,
W. D. Missouri, W. D.

July 15, 1981.

Michael J. Rovell, Albert E. Jenner, Jr., Jenner & Block, Chicago, Ill., for Allen Dorfman.

Thomas A. Wadden, Jr., Wadden, Krebs, Scheer & Gitner, Washington, D. C., for Roy Lee Williams.

Robert Scott Whiteside, Kansas City, Mo., for Kansas City Star Co.

Thomas M. Bradshaw, Kansas City, Mo., for ABC, Inc.

John T. Martin, Shook, Hardy & Bacon, Kansas City, Mo., for CBS, Inc.

## MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

Pending before this Court are applications filed by members of the news media requesting that the Court make available for public inspection and copying certain documents and materials presently in the custody of the Clerk of this Court. The materials sought consist of various applications, affidavits, exhibits, attachments and progress reports filed in connection with a number of court orders authorizing electronic surveillance in the District of Kansas. These materials were introduced in evidence during the course of a bond revocation hearing held before this Court on June 13, 1981. Claiming a common law right to inspect and copy judicial records, the news media applicants request that the Court enter an order granting them access to the documents and making them available for public scrutiny. The applications are opposed, however, by Roy Lee Williams and Allen Dorfman, two individuals currently under indictment in the United States District Court for the Northern District of Illinois. Williams and Dorfman (hereafter also referred to as "the objectors") raise numerous contentions concerning the appropriateness of authorizing public disclosure of these materials and they maintain that they are entitled to move to suppress the materials before the Court may release the documents to the media or public. The

contentions of the objectors, as well as their standing to litigate these issues in this Court, will be discussed separately below. But first, the Court will discuss at some length the pertinent events preceding and surrounding the June 13th bond revocation proceeding.

On July 18, 1980, defendants Nicholas Civella, Peter Tamburello and John Tortora were found guilty by a federal jury of (1) conspiring to bribe a public official and (2) unlawful use of the communications facilities of interstate commerce in furtherance of said conspiracy.[1] Following their convictions, the government moved to revoke defendants' bonds pending appeal. This motion was denied and, subject to certain restrictions and conditions, the Court authorized defendants' release on bond during the pendency of their appeals. Subsequently, on April 20, 1981, the government again moved to revoke the bond of defendants Civella and Tamburello. As grounds for this motion, the government alleged that both defendants had repeatedly and knowingly associated with convicted felons in violation of one of the conditions of their release. Further, the government alleged that defendant Civella's bond should also be revoked on the ground that there was a substantial risk that he might flee. In support of this contention, the government revealed that on February 4, 1980, while Civella was incarcerated in the United States Penitentiary in Leavenworth, Kansas on a prior conviction, the government intercepted a conversation between Civella and George Chiavola wherein they discussed the possibility of procuring false identification and travel documents for Civella's use in the event he was confronted with a lengthy prison sentence in connection with other crimes. Court authorization for the interception of this oral communication had been sought from and granted by U. S. District Judge Earl E. O'Connor of the District of Kansas in Misc. No. 80–WT–1.

Shortly after the government moved to revoke Civella's bond, his attorneys filed a motion requesting that they be given an opportunity to engage in discovery before responding to the government's motion. Among other things, counsel for Civella requested that they be furnished with all tape recordings, applications, affidavits, progress reports and monitoring logs associated with Misc. No. 80–WT–1. The government responded that it would voluntarily permit Civella's attorneys to inspect and copy the application, affidavit, order and all progress reports filed under Misc. No. 80–WT–1 and that Civella would also be given access to both the tape recording containing the February 4, 1980 intercepted conversation and the relevant monitoring log for that date. In addition, the government indicated that there were other electronic surveillance applications, affidavits and orders maintained under seal in the custody of the United States District Court for the District of Kansas which were associated with Misc. No. 80–WT–1. These documents were filed in connection with Misc. Nos. 79–WT–7, 79–WT–6, 79–WT–5, 79–WT–4 and 79–WT–2. Moreover, also maintained under seal and in the custody of the District Court of Kansas were affidavits filed in connection with Misc. Nos. WT–79–3–2, WT–79–4–3 and WT–79–4–3A. The government stated that these documents had been attached as exhibits to the applications for electronic surveillance in Misc. Nos. 79–WT–7, 79–WT–6, 79–WT–5, 79–WT–4 and 79–WT–2 and, in view of defendant Civella's request for discovery, the government indicated that it would not oppose unsealing all the above-referenced documents and making them available for inspection and copying by counsel for defendant Civella.

Following the government's disclosure of the foregoing information, the Court met informally with counsel for the parties to discuss the means by which this material would be made available to defendant Civella. Counsel for the government stated they had no objection to making these documents available to defense counsel for their use in the pending bond revocation proceed-

---

1. These convictions were subsequently affirmed by the United States Court of Appeals for the Eighth Circuit. *See United States v. Civella*, 648 F.2d 1167 (8th Cir. 1981).

ing and the government's attorneys agreed to take appropriate action to have certified copies of these documents transferred from the District of Kansas to this Court so that the Court might authorize release of the materials to defendant Civella and his attorneys. Thereafter, upon motion by the government, Judge O'Connor entered an order on May 20, 1981, directing that all applications, affidavits, orders and allied documents filed under seal in Misc. Nos. 79–WT–2, 79–WT–4, 79–WT–5, 79–WT–6, 79–WT–7 and 80–WT–1 "be unsealed and a certified, exemplified copy of these documents be transferred and deposited, *in camera,* in the custody of [the] United States District Court [for the] Western District of Missouri ... for their further use as deemed appropriate by the Honorable Scott O. Wright, United States District Judge, Western District of Missouri ..." The next day, May 21, 1981, after this Court received the above-referenced documents and directed that they be placed in the custody of the Clerk of this Court, the Court entered an order directing the Clerk to make these documents available for examination and/or duplication by defendant Civella and his attorneys of record. The Court's order further stated that disclosure of these materials was authorized only to Civella and his named attorneys for their use in the bond revocation proceeding and they were specifically forbidden from disseminating or disclosing any of the documents or the contents thereof without express court approval.

Soon after this last order the news media applicants entered the picture. On May 28, 1981, the Kansas City Star Co. (hereafter "the Star"), publisher of the two major daily newspapers in Kansas City, filed an application requesting access to all the documents made available to Nicholas Civella and his attorneys pursuant to the Court's order of May 21, 1981. The Star made quite clear its reasons for seeking these materials. In describing the wiretap materials which the government agreed to make available to defendant Civella, the government indicated that the affidavits associated with Misc. Nos. WT–79–3–2, WT–79–4–3 and WT–79–4–3A had been relied upon, in part, to obtain court authorization for electronic interception of oral and wire communications at the offices and home of Roy Lee Williams. At the time of the Star's application, Mr. Williams was the interim, and is now the duly-elected, President of the International Brotherhood of Teamsters, Chauffeurs and Warehousemen of America, one of the nation's largest labor organizations. The Star alleges that "[s]ince at least 1971, reports have repeatedly surfaced concerning the relationship between Mr. Williams, the Central States Pension Fund, the defendant Nicholas Civella and other reputed organized crime figures." Because of Mr. Williams' position of prominence in a national labor organization and his allegedly close ties to organized crime figures, the Star desires to examine the documents in question to determine whether there is anything contained therein which would verify a relationship or association between Williams and persons linked to organized crime. Similar applications for access to the concerned documents were subsequently filed by the ABC television network and the CBS television network.[2] Each of the applicants primarily bases its request to review these documents on the common law right to inspect and copy judicial records. *See generally Application of National Broadcasting Co.,* 635 F.2d 945, 949–50 (2d Cir. 1980).

Within a few days after the Star's application for access to the wiretap materials was filed, the Court received separate tele-

---

**2.** All the media applications were filed under the criminal action number originally assigned to the case of *United States v. Nicholas Civella, et al.,* No. 80–00023–CR–W–5. Technically, however, these applications should have been filed as new civil cases and assigned civil action numbers since this is essentially a civil dispute between the applicants and the Clerk of the Court as custodian of the records the applicants seek. Nevertheless, "[n]o jurisdictional significance should attach to the fact that this matter is being litigated] within the framework of [a] criminal case instead of a separate civil case." *Application of National Broadcasting Co.,* 635 F.2d 945, 949 n. 2 (2d Cir. 1980).

phonic communications from attorneys representing Roy Lee Williams and Allen M. Dorfman. These gentlemen informed the Court's law clerk that although they had not received formal notification of the Star's application, they had learned that such application had been made. They indicated that they had reason to believe that the wiretap materials sought by the Star contained information or allegations prejudicial to their clients' interests, and that prior to any ruling by the Court on the application, they believed they were entitled to both a hearing on the matter and an opportunity to seek to suppress the disclosure of these documents. The Court, through its law clerk, informally advised counsel for Williams and Dorfman that no immediate ruling on the Star's application was contemplated, but a hearing concerning the government's motion to revoke Nicholas Civella's bond, at which the wiretap materials might become an issue, was scheduled for June 13, 1981. At their request copies of the applications for access filed by the Star and ABC were mailed to counsel for Williams and Dorfman.[3]

On June 9, 1981, the Court received a letter from Thomas A. Wadden, Jr., counsel for Roy Lee Williams. Mr. Wadden's letter indicated that it was his understanding that certain wiretap materials relating to his client might be introduced in evidence at the bond revocation hearing scheduled for June 13th. His letter further suggested that Mr. Williams was an "aggrieved person" under 18 U.S.C. § 2510(11) who was entitled to move for the suppression of any unlawfully obtained wiretap communications or evidence derived therefrom. Consequently, Mr. Wadden asked that the Court "not permit the Government to use or introduce at the June 13 hearing any conversations, applications, affidavits, transcripts or evidence derived therefrom involving Mr. Williams without first ordering that the Government provide Mr. Williams prior notice and the opportunity to inspect all relevant material and, if necessary, to move the suppression thereof."

The Court received a similar letter from counsel for Allen M. Dorfman on June 11, 1981, as well as a formal pleading setting forth the objections of Dorfman and Williams to the applications filed by the Star and ABC. In his letter to the Court, counsel for Dorfman, Mr. Albert E. Jenner, Jr., stated that it was his understanding that the hearing set for June 13th was limited to the government's motion to revoke Civella's bond, and that the applications filed by the Star and ABC would not be considered on that date. However, Mr. Jenner's letter went on to state:

To the extent that the government, Mr. Civella or any other party, seeks to introduce any wiretap, electronic surveillance or evidence derived therefrom in that hearing, we object and request that we be given the material which is sought to be introduced, the applications for the wiretap or electronic surveillance, the affidavits in support of the applications, the inventories, and all orders relating to the tap or electronic surveillance. We also request that after being given this material, we be allowed the statutory ten (10) days in which to file any objections or motions, and that the matter be set for hearing. We believe that these requests are guaranteed by Sections 2518(9), (10) of Title 18 U.S.C. We further request that when the foregoing material is released to us, the Court continue its order placing this material under seal.

The formal objections filed on behalf of Williams and Dorfman contained additional grounds for opposing public access to the wiretap materials and further explicated the basis for their alleged statutory rights under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510–2520. Specifically, they claimed that "[b]efore the materials are made part of the public record in this case, Messrs. Dorfman and Williams are entitled to move to suppress the intercepted

---

**3.** At the time these pleadings were forwarded to counsel for Williams and Dorfman, CBS had not yet filed its application for access to the wiretap materials. That application was filed on June 12, 1981.

communications on the ground that they were not intercepted in accordance with 18 U.S.C. § 2510 *et seq.*"

Because of the short time remaining before the June 13th hearing, and in light of the contentions raised by counsel for Williams and Dorfman, the Court instructed a law clerk to contact the attorneys for these individuals telephonically and advise them that the Court had received their written communications and was aware of the positions asserted therein. And pursuant to the Court's directions, the law clerk further advised them that the Court could not predict the nature of the evidence which would be offered by the parties to the bond revocation proceeding and that if counsel were concerned that evidence might be offered which would prejudice their clients' rights, counsel should personally attend the hearing. Only in this manner could counsel be assured that their clients' rights were adequately represented.

The June 13th hearing on the motion to revoke the bonds of Nicholas Civella and Peter Tamburello was held as scheduled. In addition to counsel for the government and the defendants, the hearing was personally attended by counsel for Roy Lee Williams, Allen M. Dorfman, the Kansas City Star Co., ABC and CBS. Although the media applicants were represented by counsel at the bond revocation hearing, with the exception of two minor, and unnecessary, interruptions by counsel for ABC, the proceeding focused on issues germane to the government's motion and the media applicants did not attempt to interject their claims in the context of this proceeding. The wiretap materials which they now seek, however, were a subject of brief discussion and comprised part of the proof offered by the government in support of its bond revocation motion. During the course of the proceeding, counsel for the government sought to introduce in evidence a tape recording of the February 4, 1980 conversation between Nicholas Civella and George Chiavola. This conversation had been intercepted under the authority of a court order entered by Judge O'Connor in Misc. No. 80–WT–1. In order to demonstrate the lawfulness of the interception and to establish a proper foundation for the introduction of the tape recording, the government's attorney referred to the series of wiretap applications and orders which supported the authorization granted to intercept the subject communication.

MRS. JEANS: At this time, Your Honor, we move into our next area pertinent to this bond revocation matter and that is the matter of an intercepted conversation that occurred at Leavenworth penitentiary on February 4th, 1980.

Pertinent to that particular intercept are files, records, including orders, applications and affidavits and their attachments authorizing this series of court-authorized electronic surveillances in the District of Kansas signed by Judge O'Connor. I know that Judge O'Connor has, pursuant to order, transferred many of those files and records to this court where they are deposited under seal for the use of this Court in these further proceedings.

At this time, Your Honor, we ask that the Court first take judicial notice of the electronic surveillance orders, applications, affidavits, pertinent paper work, including all attachments submitted in connection with those electronic surveillances, those being denominated as Miscellaneous No. 79–WT–2, 79–WT–4, 79–WT–5, 79–WT–6, 79–WT–7, and 80–WT–1.

Also at this time, Your Honor, because these records and documents are relevant and pertinent to this next matter of evidence, we would offer these at this time into evidence.

MR. GOODMAN: Your Honor, if it please the Court. The Court has entered an order sealing certain documents. For purposes of these proceedings, I see no reason why that order should not continue.

It's our position, Your Honor, that because of the brevity of time given as far as being able to make a challenge on probable cause grounds and the like and have a full-blown litigated hearing con-

cerning the electronic surveillance, that for purposes of this hearing and this hearing alone that challenge will not be made.

Our efforts were to approach this situation based on 3504, and we abide by the Court's ruling. I don't want the fact that we're not objecting specifically to in any way waive any of Mr. Civella's rights or Mr. Tamburello's rights if the same are needed at some future proceeding.

That's the point.

THE COURT: All right. All right.

MRS. JEANS: At this time, Your Honor, we'll call our—I suppose there should be some clarification, Your Honor. Have you taken judicial notice of these affidavits, applications and orders?

THE COURT: Yes. Are you moving their admission?

MRS. JEANS: I am, Your Honor.

THE COURT: All right. They will be admitted and I will take judicial notice of them.

The preceding colloquy indicates that the wiretap documents were admitted in evidence during the bond revocation hearing and became part of the judicial record of that proceeding. This would appear to lend strong support to the media applicants' claim that they are entitled to review these documents under the common law right to inspect and copy judicial records. Nonetheless, the objectors Williams and Dorfman strongly oppose the public disclosure of any of these materials and urge the Court to deny the media applications outright or, alternatively, give the objectors an opportunity to move for the suppression of the wiretap documents. A hearing regarding the contentions asserted by the objectors was held on July 2, 1981, and counsel for the objectors and the applicants presented oral argument in support of their respective positions.[4] Additionally, the parties to this controversy have submitted written briefs setting forth the grounds and legal authority upon which each side relies for opposing or advocating public access to the wiretap materials. The issues raised by the parties are thus ripe for determination.

The principal argument made by the objectors against disclosure is based on certain protections allegedly guaranteed to them by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510–2520. An integral part of the statutory scheme authorizing the interception of wire and oral communications is Title III's own "exclusionary rule" embodied in 18 U.S.C. § 2515. Designed to insure maximum compliance by law enforcement authorities with the directives of the federal wiretap statute, *In re Persico*, 491 F.2d 1156, 1159 (2d Cir.), *cert. denied*, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974), and to safeguard the privacy of innocent persons, *Gelbard v. United States*, 408 U.S. 41, 47–8, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972), section 2515 prohibits the use in evidence of any intercepted communications or evidence derived therefrom if the disclosure of such information would be in violation of the wiretap statute.[5]

The objectors contend that they are entitled to invoke the exclusionary rule of section 2515 because they are "aggrieved persons" within the meaning of 18 U.S.C. § 2510(11) [6] and § 2518(10)(a). This latter

4. Also present and participating at this hearing were counsel for the government and counsel for Nicholas Civella. Counsel for the government stated that the government basically had adopted a neutral stance in this dispute and would neither support nor oppose public disclosure of the wiretap documents. Counsel for Civella generally stated that Mr. Civella opposed making the materials available to the public.

5. Section 2515 provides in full as follows:
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

6. Section 2510(11) defines an "aggrieved person" as "a person who was a party to any intercepted wire or oral communication or a person against whom the interception was di-

section "provides the remedy for the right created by section 2515," Senate Report No. 1097, [1968] U.S.Code Cong. & Adm.News 2112, 2195, and states that

> [a]ny aggrieved person in any trial, hearing, or proceeding in or before any court ... may move to suppress the contents of any wire or oral communication, ... or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

■ Preliminarily, the Court notes that Williams and Dorfman have standing under Title III to oppose the applications of the news media for access to the wiretap materials. Title III is "a comprehensive scheme for the regulation of wiretapping and electronic surveillance," *Gelbard v. United States, supra,* 408 U.S. at 46, 92 S.Ct. at 2360, and in enacting this statute Congress sought to achieve the dual purpose of "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." Senate Report No. 1097, [1968] U.S.Code Cong. & Adm.News, *supra,* at 2153. This explicit expression of Congressional intent has led the Supreme Court to conclude that the protection of individual privacy was a matter of "overriding congressional concern." *Gelbard v. United States, supra,* 408 U.S. at 48, 92 S.Ct. at 2361. Thus, because Title III contains provisions aimed at protecting the privacy interests of aggrieved persons such as Williams and Dorfman, they may legitimately rely upon that statute to oppose the public release of the wiretap documents. The immediate question, however, is whether the objectors have

waived their right to oppose disclosure under Title III by failing to seek suppression of the materials prior to the June 13th bond revocation hearing.

As noted above, Williams and Dorfman premise their right to challenge the release of the documents on their status as aggrieved persons within the meaning of section 2518(10)(a). Relying upon the "plain language" of section 2518(10)(a), the objectors argue that the wiretap materials sought by the news media "cannot be released until after this Court hears Messrs. Dorfman's and Williams' motion to suppress." Moreover, the objectors maintain that before it can be determined whether the materials in question satisfy all the mandates of Title III,

> Messrs. Dorfman and Williams are entitled to a copy of the orders purportedly authorizing the interceptions, the applications underlying those orders, and the contents of the intercepted communications at issue. 18 U.S.C. §§ 2518(8)(d), (9). After completing their review of the materials, they will be entitled to move to suppress the materials, and to a hearing to determine if the procedures established by Title III were strictly followed.

Neither the express language of section 2518(10)(a), nor the cases construing it, support the interpretation of that statute urged by the objectors. Section 2518(10)(a) clearly states that a motion to suppress "shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion." Further, the statute does not provide for a review of the challenged materials prior to the filing of a motion to suppress. Rather, "[t]he judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice."

rected." The legislative history of Title III indicates that "[t]his definition defines the class of those who are entitled to invoke the suppression sanction of section 2515 ... through the

motion to suppress provided for by section 2518(10)(a)...." Senate Report No. 1097, [1968] U.S.Code Cong. & Adm.News 2112, 2179–80.

Here, the objectors attempt to reverse the procedures set forth in section 2518(10)(a). They request access to the materials they hope to suppress prior to filing a motion to suppress, and their motion to suppress, when and if filed, would come long after the hearing at which the materials were introduced. The Court is not persuaded, however, that such bootstrapping is permissible. The cases construing the procedural filing requirement of section 2518(10)(a) have consistently held that unless the movant satisfies one of the two exceptions stated in the statute, the failure to assert a motion to suppress prior to the trial, hearing, or proceeding constitutes a waiver of that right.[7] *United States v. Scavo*, 593 F.2d 837, 844 (8th Cir. 1979); *United States v. Johnson*, 539 F.2d 181, 189–90 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977); *United States v. John*, 508 F.2d 1134, 1140 (8th Cir.), *cert. denied*, 421 U.S. 962, 95 S.Ct. 1948, 43 L.Ed.2d 391 (1975); *United States v. Sisca*, 503 F.2d 1337, 1347–49 (2d Cir.), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). *See also Gelbard v. United States, supra*, 408 U.S. at 61, 92 S.Ct. at 2367 (suppression motions asserted under the authority of section 2518(10)(a) "must be made in accordance with the restrictions upon forums, procedures, and grounds for suppression specified in § 2518(10)(a)").

There is nothing in the instant case which would indicate that the objectors' failure to file a suppression motion prior to the June 13th hearing can be justified by either of section 2518(10)(a)'s statutory exceptions. They had ample opportunity to make a mo-

tion to suppress prior to the hearing and, in fact, in their objections filed before the hearing, as well as their letters to the Court, the objectors repeatedly indicated their intention to file such motion. But no motion to suppress was actually filed, nor, for that matter, did the objectors oppose the introduction of the wiretap materials during the course of the hearing. Their failure to seek the prehearing suppression of the materials cannot be justified on the ground that they needed access to the materials before asserting a motion to suppress. Two reasons support this conclusion. For one, the objectors never formally filed a request for access to the materials. Without a formal request or motion, the Court had no basis for determining the objectors' right to inspect the documents prior to filing a suppression motion.[8] Secondly, and more significantly, section 2518(10)(a) expressly provides that an aggrieved person may be granted access to intercepted communications or derivative evidence only upon the filing of a motion to suppress and then only to the extent that the judge, in his discretion, determines it to be "in the interests of justice." Quite clearly, Williams and Dorfman were not entitled to discovery of the wiretap materials prior to the filing of a motion to suppress.

■ In addition to the foregoing, the Court finds that the objectors cannot successfully argue that they have not waived their right to file a suppression motion because they generally informed the Court of the nature of their objections prior to the hearing. Merely putting the Court "on notice" of their intention to seek suppression

---

7. Section 2518(10)(a) contemplates that "a motion to suppress wiretapped communications shall be made prior to the proceeding where they are to be introduced, unless there was no opportunity to make the motion or the party was not aware of the grounds of the motion.... It is clearly a reasonable requirement, infringing no constitutionally protected interest, since it makes exception for those instances where a party lacks a realistic opportunity to raise an objection in a timely manner." *United States v. Johnson*, 539 F.2d 181, 189–90 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977).

8. In their letters to the Court and their objections filed before the June 13th hearing, Williams and Dorfman suggest that they are entitled to review the wiretap documents under the authority of section 2518(9). Their apparent reliance on section 2518(9) is misplaced. That section only requires that "each party" to a trial, hearing, or proceeding be furnished with the authorizing documents at least ten days before the proceeding. Williams and Dorfman, of course, were not "parties" to the bond revocation hearing.

of the wiretap materials does not preserve their right to make such motion. *See United States v. Sisca*, 503 F.2d 1337, 1346–47 (2d Cir.), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). In *Sisca* the defendants advised the court prior to trial that they intended to oppose the introduction of certain wiretap evidence. They did not, however, file a motion to suppress prior to trial and first formally objected to the introduction of this evidence at the time it was offered by the government. Ruling that their suppression motion was untimely under 18 U.S.C. § 2518(10)(a), the district court denied the motion, and on appeal the Second Circuit affirmed. The appellate court held that the defendants waived their right to challenge the admissibility of the wiretap evidence by failing either to file a pretrial suppression motion or establish that their failure to make such pretrial motion was justified by one of the statutory exceptions contained in section 2518(10)(a). Further, the court specifically found that defendants' right to file a suppression motion had not been preserved simply because the defendants had informed the trial court of their intention to seek such relief.

Appellants argue, however, that having put the court "on notice" with respect to their minimization claim prior to trial, they cannot be said to have waived an important constitutional right simply by having postponed their formal motions until trial. They assert that the attitude of the judge, in finding a waiver under these circumstances "is characteristic of a prosecutorial mentality rather than a judicial mentality." We emphatically disagree.

We recently have emphasized the importance of having suppression motions made and, where possible, determined prior to trial. Moreover, Congress in-tended strict adherence to this policy with respect to motions pursuant to Section 2518(10)(a).

*United States v. Sisca, supra*, 503 F.2d at 1348 (citations omitted).

 *Sisca* provides strong support for this Court's determination that the objectors have waived their right under section 2518(10)(a) to file a motion to suppress. *Sisca* and other cases interpreting section 2518(10)(a), *see* cases cited *supra*, have held that defendants, in the context of their trial on criminal charges, forfeit their right to file a suppression motion by not complying with the mandatory filing requirement of section 2518(10)(a). Surely the objectors, who are not defendants in any proceeding before this Court, and who are not threatened by the evidentiary use of these materials, cannot claim a right to suppression greater than that provided defendants in pending criminal actions. Thus, the Court concludes that Williams and Dorfman have waived their right to seek suppression of the wiretap materials pursuant to section 2518(10)(a) by virtue of their failure to file a motion to suppress prior to the June 13th hearing.[9]

 Williams and Dorfman do not rely exclusively upon section 2518(10)(a) as grounds for opposing disclosure of the wiretap materials. They additionally contend that such disclosure is forbidden by section 2517 of the federal wiretap statute or, alternatively, that release of these materials would violate the general rule of grand jury secrecy embodied in Fed.R.Crim.P. 6(e). These arguments, however, are not particularly convincing. The objectors argue that section 2517 flatly prohibits the disclosure of wiretap materials except under the circumstances set forth in the statute. But essentially, section 2517 merely "describes

---

**9.** As previously noted, Nicholas Civella was represented by counsel at the July 2 hearing and he indicated that Mr. Civella also opposed the public disclosure of the wiretap materials. Civella's objections must also be overruled. Civella, as a party to a proceeding, was given complete access to the wiretap materials more than ten days prior to his bond revocation hearing. 18 U.S.C. § 2518(9). Despite notice of the bond revocation proceeding, access to the materials, and an opportunity to move for the suppression of the documents, Civella did not file a motion to suppress prior to the hearing and he has clearly waived his right to assert such motion. *United States v. John*, 508 F.2d 1134, 1140 (8th Cir.), *cert. denied*, 421 U.S. 962, 95 S.Ct. 1948, 43 L.Ed.2d 391 (1975).

the uses properly to be made, by law enforcement officers and others, of information acquired under a federally authorized intercept." *United States v. Johnson*, 539 F.2d 181, 186 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977). The aim of this statute is to regulate the handling of wiretap materials by investigative or law enforcement officials and to limit the purposes for which those officials may use or disclose wiretap materials. It is inapplicable to the instant situation where the Court has already passed upon the admissibility of the materials, received them in evidence and made them part of a judicial record. *Cf. United States v. Cianfrani*, 573 F.2d 835, 859–860 (3d Cir. 1978).

■ With regard to the objectors' contention that public release of these materials would violate the rule of grand jury secrecy, there is simply nothing in the record to support this claim. While counsel for Williams and Dorfman state that they "believe that [their clients] are targets of a current grand jury investigation in Kansas City" and they "believe that the materials may very well have been presented to that grand jury," their assertions are completely speculative and the actual subjects of any grand jury investigation, as well as the evidence considered in such investigation, are unknown. Further, even if it is assumed that these materials have been presented to a grand jury, this would not necessarily preclude release of the materials to the applicants. As one court has observed,

> [t]he veil of secrecy covers the grand jury proceedings themselves, not the subject of the investigation. Thus, someone who needs (and has a right to) documents that happen to be in the possession of the grand jury may have access to them, so long as his interest is in the contents of the documents themselves and is not an attempt to use the documents to determine what transpired in the grand jury room.

*In re Search Warrant for Second Floor Bedroom*, 489 F.Supp. 207, 211 (D.R.I.1980).

■ Williams and Dorfman further argue that the media applications should be denied because public dissemination of the wiretap materials would infringe upon their right to a fair trial. The objectors are currently defendants in a criminal action pending in the Northern District of Illinois and they submit that if the materials are released they will receive national coverage by the news media. Such coverage allegedly would prejudice the fair trial right guaranteed criminal defendants by the Sixth Amendment. But any potential adverse impact on the defendants' fair trial right resulting from the disclosure of these materials is conjectural at this point. Their criminal trial in Illinois is not scheduled to commence until January, 1982, and, as far as the record here indicates, the materials now under consideration are totally unrelated to that proceeding. Moreover, while the extent to which the wiretap materials will be actually disseminated upon release obviously cannot be accurately predicted, it would seem extremely unlikely that any publicity surrounding the disclosure of these documents would linger until their trial. Pertinent in this respect are the comments by the United States Court of Appeals for the Second Circuit in *Application of National Broadcasting Co.*, 635 F.2d 945 (2d Cir. 1980).

In that case the applicant sought the trial court's permission to inspect and duplicate videotapes which had been introduced in evidence during one of the *"Abscam"* trials. The lower court granted this request despite claims that the defendants in the subject proceeding, as well as defendants in closely related cases, would suffer prejudice to their Sixth Amendment fair trial rights because of the impact public dissemination of the tapes would have on prospective jurors. Relying primarily upon the common law right to inspect and copy judicial records, the court of appeals affirmed. The court stated that "there is a presumption in favor of public inspection and copying of any item entered into evidence at a public session of a trial," and "[w]e do not think this strong presumption is rendered inappli-

cable ... because the videotapes, while admitted into evidence as full exhibits, remain subject to challenge by the appellants on the ground that the method by which the evidence was obtained violated their rights to due process of law." *Id.* at 952. The court recognized that "[a]rguably of greater concern is the risk to [the] fair trial" rights of the defendants not yet tried.

We do not doubt the premise of this claim that televising the tapes will greatly increase the number of people with knowledge of their content beyond those already aware of the videotaped events through reading press accounts and viewing television newscasts. Nor do we doubt that seeing the tapes on television will create a stronger impression of the events among those who already have been exposed to news accounts of their contents.

We disagree, however, that the likelihood of such enhanced awareness of the tapes poses the kind of risk to fair trial for Abscam defendants that justifies curtailing the public's right of access to courtroom evidence. Defendants, as well as the news media, frequently overestimate the extent of the public's awareness of news. In this very case, despite the extensive publicity about Abscam that unfortunately accompanied the initial revelations and that was legitimately renewed when the indictments were returned, about half of those summoned for jury selection had no knowledge of Abscam, and only a handful had more than cursory knowledge. Even the intensive publicity surrounding the events of Watergate, very likely the most widely reported crime of the past decade, did not prevent the selection of jurors without such knowledge of the events as would prevent them from serving impartially. *Id.* at 953 (citations omitted). *See also United States v. Mitchell,* 551 F.2d 1252 (D.C.Cir.1976), *rev. on other grounds sub nom., Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *In re Application of NBC,* 648 F.2d 814, 7 Med.L.Rptr. 1153, 1162–63 (3d Cir. 1981); *In re Application of NBC,* 653 F.2d 609, 7 Med.L.Rptr. 1193, 1196–98 (D.C. Cir.1981); *United States v. Dean,* 7 Med.L. Rptr. 1405, 1406–07 (S.D.Ga.1981).

The foregoing cases illustrate that, although the Court must remain mindful that a defendant's "due process right to a fair trial is the linchpin of our criminal justice system," *In re Application of NBC, supra,* 7 Med.L.Rptr. at 1163, the Court must carefully "distinguish between those situations where there is hypothetical prejudice and those where it can be demonstrated that there has been actual prejudice caused by publicity." *Id.* In the present case Williams and Dorfman have produced no objective evidence which would support their claim that release of these materials will actually prejudice their fair trial right. And, as this Court had occasion to remark in another proceeding, as a general rule "[u]ntil a jury panel is actually subjected to a probing voir dire examination, there is no way of determining what effect, if any, pretrial publicity has had on [a] case." *United States v. Civella,* 493 F.Supp. 786, 789 (W.D.Mo.1980). Consequently, since the objectors have failed to establish that their ability to obtain a fair trial in the criminal proceeding pending in Illinois will actually be prejudiced by disclosure of the wiretap documents, the Court finds that they have not rebutted the "strong presumption" in favor of public scrutiny of these judicial records.

■ Finally, the Court must resolve one other contention raised by counsel for the objectors at the July 2 hearing. Counsel argued that the wiretap materials never became part of the public judicial record of the June 13th bond revocation hearing because they were introduced in evidence "under seal." Counsel further asserted that because the documents were admitted in evidence under seal, the strong presumption in favor of public inspection and copying of judicial records is inapplicable. The authority for this contention is based on *dicta* in *Application of National Broadcasting Co., supra.* In discussing the presumption favoring public access to materials admitted in evidence at a public proceeding, the court

stated that "[i]f, for justifiable reasons, a particular item were entered into evidence under seal, the presumption would obviously not apply, because, with respect to that item of evidence, the session of court was not public." 635 F.2d at 952 n.4. In context of this case, the Court does not find the above statement controlling.

Although there seems to be some confusion regarding this matter, the wiretap documents were not admitted under seal. This confusion apparently stems from Mr. Goodman's remarks at the June 13th hearing. At the time counsel for the government moved for the admission of the wiretap evidence, Mr. Goodman stated that "[t]he Court has entered an order sealing certain documents" and "[f]or purposes of these proceedings, I see no reason why that order should not continue." [10] Mr. Goodman went on to explain that he would not challenge the documents on "probable cause" grounds and that his attempt to suppress these materials, which had been denied earlier in the proceeding, was based on 18 U.S.C. § 3504. The Court simply acknowledged Mr. Goodman's comments and, thereafter, upon motion of the government's attorney, admitted the documents in evidence. There was no indication by the Court that this evidence was admitted under seal. On this basis alone, it is clear that Williams and Dorfman cannot claim that the wiretap evidence did not become part of the public record of the bond revocation hearing. But even beyond this, there are additional reasons for holding that public access cannot be denied because the documents were at one time under seal.

The originals of the wiretap documents in issue here were maintained under seal in the District of Kansas pursuant to the directive of 18 U.S.C. § 2518(8)(b). That section provides that "[a]pplications made and orders granted under this chapter shall be sealed by the judge." The purpose of this statutory sealing requirement is "to protect the confidentiality of the government's investigation as well as the authenticity of the application and order." *United States v. Florea*, 541 F.2d 568, 575 (6th Cir. 1976), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977). The objectives of section 2518(8)(b) have been fulfilled in this case. The original documents were maintained under seal until the confidentiality of the government's investigation was no longer a concern and the authenticity of the documents, which was not disputed at the bond revocation hearing, was assured. Thus, since the statutory objectives of the sealing requirement have been satisfied, and copies of the documents have been admitted in evidence, there would be little purpose served by the continued sealing of the documents pursuant to section 2518(8)(b). [11]

In sum, the Court has carefully considered all the objections made by Williams and Dorfman against public release of the wiretap materials and has found none of the objections sufficient to overcome the strong presumption in favor of granting public access to judicial records. In accordance with the foregoing memorandum and order, it is therefore,

ORDERED that the Clerk of Court make available for public inspection and copying all applications, affidavits, orders, attach-

10. Actually, this Court never entered an order placing the documents under seal. Pursuant to motion by the government, the original wiretap documents were unsealed by Judge O'Connor and certified copies of these documents were transferred *in camera* to the custody of this Court. The Court then directed that the documents be placed in the custody of the Clerk of Court, but did not enter an order sealing them.

11. With respect to the Court's order of May 21, 1981, prohibiting the public disclosure or dissemination of the wiretap documents, this order has also served its purpose and should no longer be continued. Indeed, the validity of this order as a ground for denying the public access to the documents is questionable. At the time this order was issued the documents had not yet become part of the public record and the public had no common law right to inspect and copy them. The documents now, however, are part of the public record and it is doubtful the public can be denied access based on the Court's previous order. *See Cianci v. New Times Publishing Co.*, 88 F.R.D. 562, 564–65 (S.D.N.Y.1980).

ments, and exhibits associated with Miscellaneous Numbers 79–WT–2, 79–WT–4, 79–WT–5, 79–WT–6, 79–WT–7 and 80–WT–1, and persons desiring copies of any of these materials shall make appropriate arrangements with the Clerk of Court.